At the Superior Court of law held for the county of Henrico, on the 16th April, 1814, on the motion of the attorney general, and for reasons appearing to that court founded on the affidavits of sundry witnesses, it was ordered that the defendant, clerk of the superior court of chancery for the Richmond district, be summoned to appear at the said superior court of law on the Wednesday following, to shew cause if any he could, why an information should not be filed against him as clerk aforesaid, for a breach of his good behaviour, and for a breach of his good behaviour in his said office, in withdrawing from the bank of Virginia, and appropriating to his own use, several large •sums of money, desposited in the said bank under orders of the said court of chancery, he the said William Waller Hening 326 having no authority from *the said court for so withdrawing or appropriating the aforesaid sums of money.
At a subsequent day of the said court, the defendant having appeared, and the parties being fully heard, the court made the rule absolute, and directed an information to be filed against the defendant. The informa *85 tion was thereupon filed by the attorney general, and a capias was awarded against the defendant returnable to the next court to answer the said information.
The said superior court at the same time adjourned to the general court, the following question arising from the rule and the information in this case, as one of novelty and difficulty, to wit: “whether an information can be filed against a clerk of a district court of chancery, for a breach of his good behaviour, or for a breach of his good behaviour in his office, on the ground stated in the said rule and information.”
The first count of the information charged that the defendant was duly appointed clerk of the superior court of chancery on the 1st August, 1810, that he qualified and entered on the duties of his office, and that on the the 11th of September, 1810, the said court duly appointed the clerk of the said superior court of chancery the receiver thereof, and ordered that the said clerk be allowed 327 a commission *of one and a half per centum on all monies brought into court, or deposited in the bank to his credit, in virtue of orders of the said court, by virtue of which appointment and by reason of his being clerk, the defendant became the receiver, &c. and it became his duty as receiver under the order of the court to draw checks in favour of any person, in whose favour he should be directed by the court to draw them, and not to draw checks in favour of himself or others, nor to appropriate to his own use, nor pay away any part of the money deposited in the bank, without the authority or direction of the court: it then avers that the defendant did, at divers days and times between the 1st of July, 1812, and the 1st January, 1814, by colour of his said office of clerk, and entitled and bound as such under the order and appointment of the court to act as receiver of said court, unlawfully, &c. and without the authority of the said court, draw divers checks on the cashier of the said bank, which were paid ; by means whereof he did get into his possession large sums of money, amounting in the whole to ten thousand dollars, and unlawfully, &c. appropriated the same to his own use, in contempt of the authority of the said court, in violation of his duty as clerk, &c. whereby he was guilty of misbehaviour in his said office of clerk, against the form of the acts, &c. wherefore the said attorney general prayed the judgment of the court, and that the said defendant be removed from his said 328 office. [There were *three other counts in the information, but it is deemed unnecessary to give an abstract of them, particularly as the general court declined answering the question propounded by the superior court.] The superior court also, for the purpose of explaining the question adjourned, transmitted to the general court a copy of the order of the chancery court of 11th September, 1810, appointing the clerk of the court the receiver thereof, and allowing him a commission on all monies brought into court or deposited in the bank to his credit, in virtue of orders of this court, and also transmitted copies of the checks under which it was charged that he had unlawfully drawn monies from the bank.
November 12th, 1814. The general court declared it to be their opinion “that in the present state of the pleadings in this case, the question adjourned to this court does not grow thereout; nor does it appear upon the record of the proceedings in the said case, to be brought before the court in such legal form and manner, as to enable this court to decide the same.” The case was therefore remanded to the superior court for further proceedings.
Note: This opinion was given under a conviction that the act of assembly, allowing questions of law in criminal cases to be adjourned to the general court, 329 intended only *such questions as might be decided by the general court, and the decisions whereof must be entered as the judgments of the superior courts, and not such as had already been decided by the superior courts. Thus, if on the rule to shew cause why an information should not be filed, the superior court had not directed the rule to be made absolute, but had, at that stage of the proceedings, adjourned the question arising from the rule, and the evidence in support of it, the general court would have been authorized by the act to decide whether the information should, or should not be filed. The adjournment of a question is very different from a question coming up to a superior court on an appeal; writ of error, or supersedeas. See 1st Rev. Code, p. 76. This construction of the act was however overlooked in the case of M’Caul, in which the question, whether the indictments ought to be quashed, or not, was first decided by the superior court, then adjourned to tie general court, and in that court argued at great length, and an opinion given thereon.